The next case on the calendar is Earley v. Annucci. Good morning, Your Honor, and may it please the Court, Andrea Oser for Defendant Anthony Annucci. I have reserved two minutes. For two reasons, Mr. Annucci is not personally liable for anything more than nominal damages for the time that Sean Earley spent in State custody on a term of post-release supervision that was never judicially imposed. First, he is entitled to qualified immunity under the particular circumstances of this case and under this Court's sort of reasonable objectives analysis. The issue that you disposed of was a different one. The last time this case was before the Court, we argued that the law was unsettled in light of subsequent State appellate precedent, and this Court rejected that argument. We're not here, obviously, to relitigate that. The Court remanded the matter to decide whether there were any reasonably objective steps that the defendants could have taken to attempt at least to remedy the situation. And in a subsequent decision in the class action that is related to this case in Batanz, this Court ruled in 2016 that the reasonable steps, the steps that were laid out there were not objectively reasonable for purposes of that class action because the defendant had waited some 14 the multiple defendants had waited between 14 and 19 months before taking those steps. But that case doesn't constrain this case and the remand in this case because there were particular facts in this case that would have made those steps, you can view them as having been accomplished, or they would have been futile in the narrow time frame at issue, which is the time that Mr. Anucci remained in State custody while his Federal habeas petition remained in litigation. Basically, your argument is that in evaluating whether Mr. Anucci acted reasonably in the circumstances of this case, we have to consider the Court's, this Court's specific instructions in Early 1 about what was to happen with regard to Mr. Early on remand. Is that one way of looking at it? Yes. But, but, and, you know, what the Court is saying is, what the Court has said is that he had to at least attempt to, to, to notify parties and get Mr. Early back before a State sentencing court. The Court has never suggested that, that, that Defendant Anucci should have unilaterally excised the PRS term and released him. This matter was pending before a Federal habeas court. And, and so Mr. Anucci could reasonably defer to the district attorney representing the State in that proceeding. It happened that the district attorney opted not to pursue resentencing while the habeas was pending and while a cert petition was pending from this Court's Early v. Murray decision. He didn't want to moot his own cert petition. So as long as that habeas proceeding was pending, Mr. Anucci could reasonably assume that the matter was in the hands of the district attorney and the Federal habeas court. And, of course, he would abide by any ruling that that Federal habeas court issued. Once that habeas order was issued and it took effect and there was no stay, Mr. Early was released. But nothing he could have done in the interim, any going through the formalities of notifying the DA, the DA already knew about the matter. Notifying Mr. Early, Mr. Early knew his own circumstances. Even notifying the State court at that period of time would have served no purpose because both of the parties to a resentencing would have opposed that relief. So you can actually look at this as a fairly That seems to me a somewhat artificially constrained reading of what we're dealing with. I mean, this is a case involving a senior New York State official who made it clear that he didn't intend to comply with instructions from this court. He said, matters dictated by State law, not Federal law, and after we ruled he took the man back into custody. And that was the precipitating factor in this that got us to where we are today. I understand the Court's frustration with Not frustration. I mean, we issue orders. We issue orders to State officials all the time, and we need to have them respected. Of course, Your Honor. You know, I've been on the bench a while. I've never seen anything like this. Well, in the habeas case that you're talking about, in Early v. Murray, Mr. Rannucci wasn't ordered to release Mr. Early. What he was told was that the State Do you think he was permitted to take him back into custody after that decision? Well, he was told that the State writ large had two alternatives, to have him to have Mr. Early resentenced. Now, that's not something Mr. Rannucci could personally have done, but the State's sentencing courts and the D.A. could have had him resentenced, or this or the State writ large could have excised the PRS term. He didn't believe that this Court's decision authorized him personally to take those steps. What this Court has said is that the procedural safeguards that would have addressed this decision Who was in charge of the agency? Well, he was general counsel at the time. He was general counsel to the agency. He wasn't in charge of the agency. And, in fact, the record evidence was that he was not aware of this issue until the Court's habeas decision in Early v. Murray. He's being faulted, once he learned of the situation, for not responding promptly enough with objectively reasonable steps to remedy the situation. And I'm simply Mr. Early's case was, it was remanded to the district court, and the first thing the district court had to do was determine whether the petition was timely. That's correct. I understand. And if it was timely, then the district court, we instructed the district court to issue a writ of habeas corpus excising the term of PRS. That's exactly right. So your argument is that there were specific instructions as to what happened coming from this court to the district court. What happened is it goes back to Judge Corman. It takes him until May 2007 to determine a reasonable time, but takes a while to determine whether the petition was timely. That decision comes out in May. And then he puts in a stay so that the DA might have an opportunity to seek resentencing if they wanted to. DA then says, no, we want to seek cert. So it was all before the district court during this entire period. That's exactly right. So it's not clear what Mr. Annucci could have done with regard to this case, even if he was disregarding obligations with regard to other cases. That's exactly right. This case is separate, is unique. I'm not saying it's the only one of its kind. It's the only one I'm aware of. But it's quite different from unnamed members of a class action, some of whom may not have even known that they were subject to improper PRS terms. And so the Court indicated that DOPS should have been taking steps to identify who those people were and to let them know about the issue. None of that applies here. This was a case that was in active litigation in the Federal Tribune. So it's up to Mr. Annucci to defer to the leadership of the district attorney and leave this matter in the hands of the Federal Tribune. Yes, but the problem that I have with that position is you're arguing that there were these litigation-driven constraints on what he could do, but he told DOC, DOSIS personnel, what he intended to do, which is, in fact, to do what he intended to do, and he emailed them, quote, to inform them that early one conflicted with New York State law and that DOSIS would not be following its holding. Your Honor, qualified immunity is an objective analysis. You're looking at, I mean I'm looking at, I'm telling you what he said. Yes, I Not only what he, what he told the agency. And that has serious repercussions for other cases, the cases in the Patan's class action where this Court is saying that reasonable steps taken promptly might have made a difference. But it has no repercussions for this specific case, for Mr. Early's case, because in the time frame that is at issue in this case, nothing he would have said or done differently would have made a difference in that time period. And so you can look at that as either he's entitled to qualified immunity or the plaintiff is entitled to no more than nominal damages. Nothing he would have done would have made a difference in this limited time frame. Once there was an ineffect habeas order that was not stayed, Mr. Early was released. Why is Early entitled to nominal damages? I'm sorry? If you are correct, why is, would he be, why would Early be entitled to nominal damages? Well, if I'm correct on qualified immunity, he's not entitled to qualified, to nominal damages. Oh, I'm sorry. The case gets dismissed, yes. But I'm just saying you can look at it. You can look at it either way. And finally, I'll just mention that even if the Court disagrees with both of those arguments, we would still ask that the Court vacate the judgment and remand it with instructions to recalculate the damages to eliminate the enhancement for three circumstances that were not natural and reasonably foreseeable consequences of Mr. Early's prolonged incarceration. Unless the Court has any questions. Thank you. Good morning, Your Honors, and may it please the Court. My name is John Goetz, and I represent Mr. Early in this matter. And, Judge Parker, to follow up on what Your Honor had indicated to counsel, we respectfully submit, yes, the ship has sailed in this matter. As it relates to Mr. Annucci's actions and the reasonableness, or in this case, the lack of reasonableness, objective reasonableness in his behavior. Your Honor, as this Court indicated, Mr. Annucci did have options. And, in fact, he opted to disregard this Court's orders. He opted to disregard, in 2006, the early one and early two decisions from Judge Walker. And, as this Court pointed out, in Vincent Vianucci, or excuse me, Vincent Viellec, in early Vianucci in 2013, this Court provided a detailed roadmap as to all of the issues surrounding this defendant and what he did and failed to do. And his action of affirmatively indicating to his, this isn't, I'll take a step back in a minute about the district attorney's office, I don't want to disregard that issue. But in this particular issue, Mr. Annucci went out of his way to say, I disagree. I disagree with this Court's ruling because there are issues with regards to how the state may find on this issue. And I find that this Court made it perfectly clear, I would suggest, in both early one and early two, but certainly in the Vincent case, as to what was appropriate and what his options were. And he decided to do none of those options. The last few ---- Roberts. Yes, Your Honor. I guess it's a hypothetical. If after early, this Court's decision in early, the case had been remanded to Judge Corman, and Judge Corman had found that the petition was untimely, and let's say he was correct, hypothetically, and, therefore, denied, denied the habeas petition, would  he still be not qualified for qualified immunity? Would your view be that if a Federal court said, I am not going to order Mr. Early's release, he does not qualify for habeas, would Mr. Annucci still, in your view, have not been entitled to qualified immunity? Very good question, Your Honor. This is what I take to give the depends answer, because there's a lot of steps into what Your Honor was saying. First, I would suggest when you look at the ---- and maybe this isn't the proper terminology, but the law of the case, if you take this case in its totality, I would suggest that it appeared from the way the Court ordered in Early 1 and 2 that it believed this to be kind of a matter of form. Otherwise, the Court wouldn't have been able to hear the argument. Don't fight the hypothetical, though. Just take my hypothetical and let's move on to that. And I think the answer then becomes, if this Court would have said, assuming that it would have then been remanded or appealed. So assuming ---- here, let me be clear. My hypothetical is that it went on remand. Judge Corman denied the petition. And let's even assume that it was appealed up to this Court and we affirmed. For whatever procedural basis, let's call it lack of timeliness. Assuming that, assuming that it was correctly denied on a procedural ground, would Mr. Annucci be entitled to qualified immunity or not? If it was denied procedurally, I would have to say yes. It would ---- So, and let me then play out why I asked that hypothetical. If there was still an ongoing legal process to determine whether Mr. Early ought to be released, wasn't Mr. Annucci entitled, reasonably, objectively reasonable person in his shoes entitled to see, well, let's see what the district court rules? In this particular case, no, Your Honor. And here's why. Mr. Annucci had an option that was plain as day to not ---- he could have kept ---- he placed Mr. Early in custody. So at that point, when I say he, obviously, his actions and his behavior compelled those underneath him to keep Mr. Early in custody. There was nothing that compelled him to say, we're going to keep this man in here in custody, incarcerated, until this issue is resolved. And in fact, I think Magistrate Stewart, the judge, the court below in its decision gave a very good rationale as to you can't just perpetually keep somebody in to moot out an issue. And again, on this particular issue, there was nothing that would have stopped this defendant from saying, hey, let's take a step back, let's abide by this court order, let's let the process play through. And then if he's in, well, then he can certainly be remanded back into custody or have a proper hearing at that point in time. But I think it goes back, Your Honor, to the issue of what this defendant was doing and not doing. And so I think when you really glean through that issue, he had the option of not  He had the options. In fact, he had the mandate, if you will, from this court throughout. And I think Vincent Vianucci, Vincent Vialic, rather, really laid that out. And candidly, I don't believe that there's been any substantive change in the defendant's argument as to why he should either receive, as the coordinator of DOCS, why he should receive the qualified immunity. And certainly, the court below rationed that out, both at the summary judgment level and then again at the trial level. Because again, as the court — this Court will recall, the trial court gave an option of looking at — went through, I think, quite thoroughly. And I say that Mr. Early didn't win every issue, either. But I think when you look at what the court below was doing is it took this Court's guidance. It took the roadmap of Vincent and followed it right down the line. It's actually so clean that it's — I hate to use this term because it was kind of fun. And I don't mean because of the ruling, but it was fun because it was so logical. And it was logical because it just took what this Court was saying and applied it. And that's — that, I found to be something that shows that the court below had gone through the rationales. And I think, Your Honor, when you look at what the court below says, there's the case — and it's a little different — but the Warren v. Pataki matter where it's this no harm, no foul, well, there was a harm here. So to go through all of those steps, I don't think is fair for the defendant to try to utilize that now, yet again. But more importantly, I think it was reviewed by the court. It was rationalized as to what should happen. And I would suggest that it followed, yet again, this Court's litany of decisions on this point. And I would suggest that to say that because Mr. Early is the first, it shouldn't really apply, I would respectfully state that I think that's a bit disingenuous because, if anything, Mr. Annucci made it clear that he knew it was going on by his actions. Can I just ask you — tell me if I'm distilling part of your argument correctly. And it's sort of a follow-up on what we've been saying. It's my understanding that your argument, at least in part, is that even though there was still ongoing litigation before the district court about whether habeas should be granted, that the path forward was so clearly in favor of Mr. Early winning that Mr. Annucci, or a reasonable person in the position of Mr. Annucci, would have understood that and should have understood that, look, there's no way out except to either excise the PRS condition or release him. Is that it? And if it had been a trickier and harder case, then a reasonable person in Mr. Annucci's situation might have said, well, no, this is fuzzy, and we don't know how it's going to play out in the district court. But a reasonable person in his position should have seen this train coming. Your Honor, two parts to that, and it's a good question. And the answer is, first, again, through the Vincent, it laid out Mr. Annucci's background. He's not just some person off the street. He was fully aware of the laws and the rules. And second, Your Honor, to your point, and then, by the way, there's a third option that he could have done, which is to just remand it over to State court and have the judge resentence him or not. I mean, and that never happened. But back to your point, Your Honor, when you look at what took place — Could Mr. Annucci have done that, or did he need the DA to do that? The Department of Corrections can contact the Court at any time, Your Honor. They do it all the time. And I think the record shows that that is not an unusual action. And, in fact, administrative issues like that can occur. And I'm not saying early is quite the same follow, but if you know what I mean. If the State sees — if the Department of Corrections sees that there was some issue, they'll refer it over. And I think, Your Honor, is the Francis case kind of addressed that issue. The recent case kind of addresses that issue. And it's distinguished. In this case, if he'd done that, he would have — your argument is, if I'm understanding it correctly, that he should have understood that the merits of pursuing this any further were extremely weak. He should not be worried about pursuing the cert petition because there's no way he's going to get cert. And he should have had — he should have contacted the DA and said, let's get a resentencing. Precisely, Your Honor. And, in fact, he did the opposite. He made it clear that he was not going to abide by this Court's order. And I just — I think, to follow up, and I know my time is up, so if you have further questions, but with regards to what Judge Parker started with, I just found it remarkable what he said in not abiding by a Court's order. And that's record. That is just — that is record. And, finally, Your Honors, with regards to the issue, if I may just take a couple of extra seconds, on the issue of the damages, yet again, I think that the Court did a very good job of explaining the rationales to the damages that were afforded in this matter. It's certainly, in my mind, a middle of the road because the Court explained some of the higher ends and what was too high, some of the lower ends and what might be too low. And I think he did a yeoman's job of going through that issue. And for those reasons, Your Honors, I'd respectfully request that this Court affirm the judgment in its totality. Unless there's any other questions, I thank you. Two points briefly. If it was so clear how the federal habeas proceeding was going to go, then it was reasonable for Mr. Annucci to allow that process to result in the execution. How many times did this Court have to tell Annucci that you've got to have a defendant in court to pronounce the supervisory release component before he got it? The message is loud and clear, Your Honor. How many times? We're simply saying this is a very early case. There is no litigation in this Court that I'm aware of that a public official received with clarity and repeatedly instructions on what to do. And he was just determined not to do it. I mean, this embarrasses us. Well, in fairness, Your Honor, Mr. Annucci really wanted courts to order the release of these individuals. He didn't want to take it upon himself unilaterally to simply excise these terms that were intended. And we know in this case the State court understood that P.R.S. was required. Why didn't he send it back to court as a ---- Well, he had no authority to send something back to court. The most he could have done was informally notify the State court. And as I've said, when you have a matter where both parties to that resentencing were opposed, both the D.A. and Mr. Early, there's no reason to think that the State court would have acted. I will say, to follow up on your question, what if the habeas petition had ultimately been denied as untimely? I don't want to look a gift horse in the mouth. My opponent is conceding that then Mr. Annucci should have qualified immunity. But I think arguably at that point, the reasonable objectives, the reasonable steps analysis kicks in, right? The habeas is denied because it's untimely. That doesn't change the fact that he is being subjected to a term of P.R.S. that was not properly imposed. And at that point, I think the State court, it's very likely, would have taken action. And we also now know the State court made a finding that Mr. Annucci, in fact, was advised, likely was advised by his counsel of this P.R.S. term. He misled this court when he indicated he hadn't been advised. So the D.A. might well not have opposed resentencing, and that might have proceeded. But in any event, at that point, there were certainly reasonable – there would have been reasonable steps that would not have been futile. But until the habeas litigation was concluded, nothing would have happened. A note received by the State court would have been at most held in abeyance. The State court would not have convened something and taken this away from a district attorney that was litigating a Federal habeas case. Thank you, Your Honor. Thank you both. And we will – nicely argued on both sides. We'll take it under advisement.